## Snyder v. Lackawanna County Commissioners

*Welles, Mumford, Stark & McGrath,* for petitioner.

*P. V. Mattes,* for respondents.

HOBAN, J., August 20, 1937.—The matter comes before the court on a writ of alternative mandamus seeking to compel the County Commissioners of Lackawanna County, acting as a county board of election, to receive a nomination petition tendered to them by Ray C. Snyder, a candidate for the Republican nomination for the office

of Burgess of the Borough of Clarks Summit in Lacka-wanna County. Upon the return day of the writ, a motion to quash was filed by the county solicitor on behalf of the county commissioners and argued forthwith. The argument was participated in by counsel for another candidate, who had already filed nomination papers for the same nomination. Hearing on the merits was postponed until August 18th and testimony was taken pending disposition of the motion to quash.

It appears from the evidence that on the last day for filing nominating petitions one A. W. Singer, a police officer of the Borough of Clarks Summit, went to the office of the county commissioners about 3:30 p.m., one-half hour before the usual time for closing the offices, at which time the statutory time for filing petitions would expire. He had with him five petitions for various offices in the Borough of Clarks Summit, including the petition of Ray C. Snyder. Singer testified that the clerk, who was receiving petitions, refused to take the petition for the nomination of Snyder because it was not accompanied by a post office money order or a certified check for the sum of $20, the fee required by the Pennsylvania Election Code of June 3, 1937, P. L. 1333, to be paid for filing petitions. Singer then told the clerk that "Money had been sent down to take care of that," but when told that only a money order or certified check would be accepted Singer made no further attempt to file the papers, either under protest or otherwise, and did nothing except telephone to Snyder's home in Clarks Summit for further instructions. When asked what money had been sent down or who had it, he replied that he had the money, but when questioned further as to how much money he had he said that he thought he had $15 or $18 which had been given to him by a man named Miller in Clarks Summit to take care of all the petitions. His explanation of his failure to do anything further or to tender the required fee in cash is that, having been told that money would not be received, he thought it was no use. The only other testi-

mony in the case was that of Anthony Giordano, chief clerk of the county commissioners, who was called by the petitioner for cross-examination and testified that the commissioners had issued orders that petitions should be received when accompanied by the proper amount in cash, but received under protest, and that those filing the petitions would be notified at a later date whether or not their petitions would be received and their names placed upon the ballot. Upon the testimony as outlined above, petitioner rested, as did respondents, and respondents thereupon moved to quash the proceedings on the ground that no cause of action had been disclosed by the testimony.

Regardless of the question as to whether the tender of money in lieu of a post office money order or a certified check would entitle petitioner to have his petition received and his name placed upon the ballot, the fact remains that, under the testimony, no tender in any shape of the specific amount required by the act was made, and this fact alone would seem to bar petitioner from the relief sought in these proceedings. The witness Singer sought to excuse himself from making further offer on the ground that the clerk had notified him that money would not be received, but it is difficult to see how a tender of $20 could be made from $15 or $18 in his pocket, nor was there anything to prevent petitioner, or his agent, from making formal tender to the county election board itself, rather than to a clerk. We cannot substitute what an individual might have done for what actually took place.

In the petition for the writ of alternative mandamus, petitioner likewise raised the point that no filing fee was necessary to be paid since in fact the Borough of Clarks Summit makes no appropriation for any salary for its burgess, and, under the Pennsylvania Election Code, candidates to offices to which no compensation is attached are exempt from the payment of a filing fee, but it is believed that this position is untenable. The General Borough Act of May 4, 1927, P. L. 519, sec. 1023, authorizes

280

the payment of compensation by way of salary to a burgess. If this petition were accepted, nothing would prevent an appropriation by ordinance of an amount to pay salary to the burgess in the event of his election and assumption of the duties of the office. Furthermore, the burgess, under his powers as a magistrate or justice of the peace, is entitled to compensation for services performed in that capacity. Under any sensible meaning of the term, it must be held that the office of burgess is one in which the incumbent is entitled to compensation. It follows, therefore, that under the Pennsylvania Election Code petitioners for nominations for such office must pay the filing fee prescribed.

Now, August 20, 1937, the petition for writ of alternative mandamus filed in the above-entitled case is dismissed; costs to be paid by petitioner.